IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **IZELL BROWN, JR.,** | CASE NO. 3:21 CV 1832 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **TAYLOR SHORT, et al.,** | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

*Pro se* Plaintiff Izell Brown., Jr. brings this 42 U.S.C. § 1983 civil rights complaint against Defendants Lieutenant Taylor M. Short and Correctional Officer Nathan Ray of the Toledo Correctional Institution. *See* Doc. 1. Defendants filed a Motion to Dismiss (Doc. 7), and Plaintiff filed Motion for Default Judgment (Doc. 8) and a Motion for Summary Judgment (Doc. 9). All motions are ripe for decision. Jurisdiction is proper under 28 U.S.C. § 1331. For the following reasons, the Court denies all three motions.

### BACKGROUND

Plaintiff alleges that while incarcerated around August 18, 2021, and on "mental health constant watch", he was banging his head on the door while seeing medical. (Doc. 1, at 4). He told Defendant Short he was "going to take the handcuffs hostage" in order to get a cell move. *Id.* After he was done in medical, Short "without notice" told him to "get up on the wall"; Correctional Officer Ridgeway[1] placed him in tethered restraints and "gro[]ped [his] butt." *Id.* Plaintiff references the Prison Rape Elimination Act (PREA) and says he requested a captain be present,

---

1. Ridgeway is not named as a Defendant in Plaintiff's Complaint. *See* Doc. 1, at 1, 3.

but the request was denied. *Id.* Once back in his cell Plaintiff "refused to[] give back [the] cuffs." *Id.* Plaintiff was then left "tethered and restrained behind [his] back" "to a cuff port" for 2 to 2.5 hours. *Id.*

Defendant Short returned and "attempted to get the cuffs back" without a captain present. *Id.* Plaintiff says he was agitated from being restrained for so long, and "attempted to hold the cuff port in request for a captain." *Id.* Plaintiff asserts Defendants Short and Ray then "began punching, twisting, and slinging [his] arm" in an effort to "force [his] arm back into the cell". *Id.*; *see also id.* at 5 (describing the officers "pushing, slamming, punching, and twisting [his] arm to get it back into the cuff-port"). This ruptured a tendon in Plaintiff's right middle finger, which required surgery. *Id.* at 4-5. He was in a cast for three months. *Id.* at 6.

Plaintiff asserts Defendants' actions constituted excessive force. He seeks $300,000 to cover his medical costs and mental and physical pain and suffering. *Id.* at 6.

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

Defendants move to dismiss Plaintiff's complaint, asserting qualified immunity. They contend Plaintiff has not plausibly alleged their actions were clearly unconstitutional.

The defense of qualified immunity shields government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

However, although "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to discovery," *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), the Sixth Circuit has "cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). Thus, "[a]lthough an [official's] entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley*, 779 F.3d at 433-34 (internal marks and citations omitted). The reason for this "general preference" is that: "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents [the court] from determining whether the facts of this case parallel a prior decision or not" for purposes of determining whether a right is clearly established. *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (brackets omitted). Nonetheless, dismissal based on qualified immunity at

the pleadings stage may be appropriate under some circumstances. *See, e.g.*, *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

Defendants contend that "[n]othing in the Complaint indicates that the force used was unreasonable", as it was "merely to maintain the mental health watch for Plaintiff and keep him from sticking his arms out of the cuff port where he could injure officers or himself." (Doc. 7, at 5). Further, they assert no "clearly established" right has been violated because "[a] reasonable officer would have believed Defendants' actions in trying to restrain and keep Plaintiff's body parts in his cell were lawful in nature." *Id.* at 5-6. They cite *Combs v. Wilkinson* for the proposition that physical contact used to maintain prison security or discipline does not rise to the level of an Eighth Amendment violation unless it is "wanton and unnecessary" and for the proposition that correctional officers are given "wide deference". 315 F.3d 548, 556-57 (6th Cir. 2002).

Since Defendants raised the qualified immunity defense, Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Johnson*, 790 F.3d at 653. At the pleading stage, Plaintiff can carry this burden by alleging facts making out a plausible claim that Defendants' conduct violated a constitutional right that was clearly established at the time of the violation. *Id.*

An inmate's post-conviction excessive force claim arises under the Eighth Amendment's cruel and unusual punishment clause. *Pelfrey v. Chambers,* 43 F.3d 1034, 1036-37 (6th Cir. 1995). To prevail on an Eighth Amendment claim, inmates "must satisfy both an objective and subjective component." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). The subjective component of an Eighth Amendment claim centers around the prison official's state of mind. *Id.* Thus, this component requires the court to consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

4

the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law; however, "a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain." *Pelfrey,* 43 F.3d at 1037 (internal quotation marks and alterations omitted). To determine whether the use of force was "wanton and unnecessary", courts are to consider factors including: the extent of injury suffered by an inmate, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

While it is beyond debate that an individual's has a general right to be free from excessive force, whether a reasonable official would have understood that Defendants' actions here violated that right depends on the specific facts. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("[I]f the qualified immunity questions presented are fact-intensive, the record may not be adequately developed to evaluate the defense at the pleading stage under Rule 12(b)(6)."). And the Court is mindful of the Sixth Circuit's "general preference", *Guertin*, 912 F.3d at 917, that the question of qualified immunity be resolved at the summary judgment stage, rather than the pleadings stage. *See Wesley*, 779 F.3d at 433-34.

In the light most favorable to Plaintiff, the Complaint alleges Plaintiff was "agitated" and "attempted to hold the cuff port" in an effort to request a captain's presence when Defendants "began punching, twisting, and slinging" or "pushing, slamming, punching, and twisting" his arm in order to "force" it back into the cell, and he suffered a ruptured tendon which required surgery. (Doc. 1, at 4-5). Under these facts, the Court finds Plaintiff has plausibly alleged an excessive

force claim sufficient to survive Defendants' motion to dismiss based on qualified immunity at this stage of the proceedings. Defendants are free to assert qualified immunity again at the summary judgment stage.

Plaintiff's Motions

Also pending are two motions filed by Plaintiff. First, Plaintiff filed a Motion for Default Judgment. (Doc. 8). This motion will be denied, as Defendants responded to Plaintiff's Complaint with a Motion to Dismiss, and thus are not in default. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* . . . the clerk must enter the party's default.") (emphasis added)

Second, Plaintiff filed a Partial Motion for Summary Judgment. (Doc. 9). This motion is, in essence, an opposition to Defendant's Motion to Dismiss, and the Court has considered it as such. To the extent Plaintiff seeks judgment in his favor, the motion is denied.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 7) be, and the same hereby is, DENIED, and it is

FURTHER ORDERED that Plaintiff's Motion for Default Judgment (Doc. 8) be, and the same hereby is, DENIED, and it is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 9) be, and the same hereby is, DENIED.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE